IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NICHOLES B. NAPIER, | | |
| Plaintiff, | No. CIV S-07-2117 DAD | |
| vs. | | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ORDER | |
| Defendant. | | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.  For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion for summary judgment is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for payment of benefits.

**PROCEDURAL BACKGROUND**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act (Act) on May 19, 2005, alleging disability beginning on December 31, 2003, based on surgery for a broken hip, right knee surgery, and arthritis in his right hip.  (Transcript (Tr.) at 56-60, 80-86.)  The application was denied initially on July 22, 2005, and upon reconsideration on September 16, 2005.  (Tr. at 39-53.)  Pursuant to plaintiff's timely request, a hearing was held

before an administrative law judge (ALJ) on April 9, 2007.  (Tr. at 286-320.)  Plaintiff, represented by Bruce Hagel, Esq., testified at the hearing, as did a vocational expert.  In a decision dated June 4, 2007, the ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since March 15, 2005, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: status post right hip posterior fracture dislocation with ORIF with post-traumatic arthritis, status post arthroscopic partial meniscectomy debridement of the right knee, degenerative disc disease in the lumbar spine, and depression ([sic] CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that based upon the combined disability to his right hip, and right knee, the claimant has the residual functional capacity to perform sedentary work activity.  He is only able to stand and walk for a few minutes at a time.  While he is up and about, he cannot do any bending, stooping, lifting, carrying, running, jumping, squatting, or kneeling (Exhibit 11F/29-30).
>
> Based upon Dr. Foster's findings, his mental residual functional capacity reads as follows, he is mildly impaired in his ability to relate and interact with supervisors and co-workers.  His ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions is moderately to significantly impaired.  He has difficulty with auditory processing as well as visual processing and recall, which may interfere with his ability to follow through on complex verbal or written instructions.  His ability to understand, remember, and carry out detailed but uncomplicated job instructions is moderately impaired.  His limitations in attention and concentration suggest that he has difficulty attending to complex, detailed instructions.  His ability to understand[,] remember, and carry out simple one or two-step instructions is moderately impaired.  His ability to deal with the public is mildly impaired.  Per report, he gets anxious around strangers.  His ability to maintain concentration, persistence, and attention is moderately impaired, especially if the task involves complex, multiple step instructions.  His ability to withstand the stress and pressures associated with day-to-day activity is

2

moderately impaired as he continues to adjust to his post-injury limitations and experience of depression, anxiety, and frustration (Exhibit 10F/6-7).

5 [sic].  The claimant is unable to perform any of his past relevant work (20 CFR 404.1565).

6.  The claimant was born on February 17, 1978 and was 27 years old, which is defined as a younger individual age 18-44, on March 15, 2005 (20 CFR 404.1563).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

10.  The claimant has not been under a disability, as defined in the Social Security Act, from December 21, 2003 through the date of this decision (20 CFR 404.1520(g)).

(Tr. at 13-24.)

On August 14, 2007, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 5-9.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on October 8, 2007.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized in the Ninth Circuit as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

/////

> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances the following three arguments in support of his motion for summary judgment: (1) the ALJ failed to properly credit the opinions of a treating physician and a consultative examiner; (2) the ALJ failed to properly evaluate and credit plaintiff's statements regarding the nature and extent of his pain and functional limitations; and (3) the ALJ failed to properly assess plaintiff's residual functional capacity and consequently failed to include all of plaintiff's limitations in the hypothetical question posed to the vocational expert, and also failed to ask the vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles. These arguments challenge the ALJ's determinations at steps four and five of the sequential evaluation process. Each argument is addressed below.

### I. Step Four Analysis of Residual Functional Capacity

A claimant's residual functional capacity (RFC) is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c).

Here, the ALJ found that plaintiff has the following physical functional limitations arising from the combined disability to his right hip and right knee: he is only able to stand and

walk for a few minutes at a time, and he cannot do any bending, stooping, lifting, carrying, running, jumping, squatting, or kneeling. (Tr. at 18.)  The ALJ found that plaintiff also has the following mental functional limitations arising from chronic adjustment disorder, major depression, and borderline intellectual functioning:  he is mildly impaired in his ability to relate to and interact with supervisors and co-workers; his ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions is moderately to significantly impaired; he has difficulty with auditory processing as well as visual processing and recall, which may interfere with his ability to follow through on complex verbal or written instructions; his ability to understand, remember, and carry out detailed but uncomplicated job instructions is moderately impaired; his limitations in attention and concentration suggest difficulty attending to complex, detailed instructions; his ability to understand, remember, and carry out simple one or two-step instructions is moderately impaired; his ability to deal with the public is mildly impaired; he may get anxious around strangers; his ability to maintain concentration, persistence, and attention is moderately impaired, especially if the task involves complex, multiple step instructions; his ability to withstand the stress and pressures associated with day-to-day activity is moderately impaired. (Tr. at 18-19.)  On the basis of these findings, the ALJ determined that plaintiff's physical RFC prevents him from performing any of his past relevant work as security guard, stocker/salesman, computer repairman, bouncer, and fast food worker but does not prevent him from performing unskilled sedentary work consistent with his physical RFC, i.e., no standing and walking for more than a few minutes at a time and no bending, stooping, lifting, carrying, running, jumping, squatting, or kneeling.  (Tr. at 21-22.)

### A.  Opinions of Treating Physician Portwood and Consultative Examiner Foster

Plaintiff asserts that the ALJ's analysis of his RFC is flawed because the ALJ, without a legitimate basis for so doing, failed to credit the opinions of M. Peggy Portwood, M.D., who was plaintiff's treating physician for pain management, and John Alan Foster, Ph.D., who performed a psychological examination of plaintiff.

On March 14, 2006, Dr. Portwood examined plaintiff and instructed him to remain off work until retrained. (Tr. at 239.) Lifting and carrying were to be limited to 10 pounds frequently, 25 pounds occasionally, and 40 pounds rarely, and he was not to carry anything for more than 10 feet. Plaintiff was instructed not to climb ladders, to use stairs rarely and was directed to change position as needed. (Id.) Dr. Portwood's progress report and treatment notes for March 14, 2006, reflect that with respect to medications plaintiff had tried Lyrica, Norco, and Lunesta, which helped to some degree with pain and inability to sleep, but Effexor had made him agitated and aggressive. (Tr. at 239-40) Dr. Portwood noted that plaintiff remained depressed and "feels like drowning himself so relief of pain isn't enough." Her treatment plans included trials of Indocin for pain and Nexium for his stomach, consideration of an epidural, and a recommendation that he see a psychiatrist for his depression. (Id.)

On May 17, 2006, Dr. Portwood noted that plaintiff was having a great deal of pain while sitting, was unable to get comfortable; and had increased his use of Norco. Dr. Portwood continued the restrictions she had ordered in March 2006. (Tr. at 264.[1]) On July 13, 2006, Dr. Portwood increased plaintiff's Lyrica dosage, continued his prescriptions for Lunesta and Norco, requested a "ROHO cushion" for plaintiff for the purpose of diffusing pressure while sitting, and reiterated the direction to change position as needed. (Id.) On October 3, 2006, plaintiff reported increased pain, and Dr. Portwood placed him on a trial of Elavil and Indocin. (Tr. at 265.) She continued the restrictions previously imposed, including the instruction to change position as needed, and added restrictions on walking (no significant walking, no uneven ground, use of a cane or walking staff) and driving (no more than 30 to 45 minutes). (Id.)

The ALJ did not discuss any of the limitations assessed by Dr. Portwood regarding plaintiff's functional abilities, including her opinion that plaintiff needed to change position as needed. The ALJ's sole comment about Dr. Portwood's treatment and opinions was

---

[1] Dr. Portwood's notes after March 2006 are reflected in Dr. Branscum's comprehensive summary of plaintiff's medical records in January 2007. (See tr. at 253-66.)

that "[i]n March of 2006, the claimant was evaluated by Dr. Peggy Portwood relative to his pain management. He reported that he felt like drowning himself." (Tr. at 18.)

After performing a psychological examination of plaintiff on December 8, 2006, Dr. Foster also assessed plaintiff as having a limited ability to sit. In summarizing his test findings, Dr. Foster opined that plaintiff's "experience of pain when sitting for long periods of time as well as his medication-related shaking,[2] appear to hinder his ability to work at an appropriate pace." (Tr. at 250.) Dr. Foster found that plaintiff was functioning at the borderline range of ability, with impairments in verbal reasoning, perceptual organization, visual memory, and attention and concentration. (Id.) Dr. Foster diagnosed adjustment disorder, chronic, with mixed anxiety and depressed mood, and borderline intellectual functioning. (Id.) Dr. Foster indicated that the testing did not reflect any evidence of malingering or any exaggeration of cognitive impairments, and he considered the test findings to be an accurate reflection of plaintiff's mental state and level of functioning. (Tr. at 248-49, 250.)

On January 10, 2007, Dr. Foster completed a form titled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." (Tr. at 242-44.) Based on his test findings of plaintiff's significant limitations in attention and concentration, as well as impaired judgment due to depression and lack of focus, Dr. Foster noted plaintiff's markedly limited ability to understand and remember detailed instructions, markedly limited ability to carry out detailed instructions, and moderately limited ability to make judgments on simple work-related decisions. (Tr. at 242.) In addition, based on his observations of plaintiff's impaired ability to change between tasks and switch between mental sets, Dr. Foster found plaintiff to be moderately limited in his ability to respond appropriately to changes in a routine work setting and in his ability to respond appropriately to work pressures in a usual work setting. (Tr. at 243.)

---

[2] Dr. Foster had observed that plaintiff's right hand shook uncontrollably throughout testing, and plaintiff indicated that it was a side-effect of his medication. (Tr. at 247.) In May 2006, Dr. Portwood had noted plaintiff's report of a tremor he believed to be related to medication. (Tr. at 264.)

1            Although the ALJ "acknowledge[d] the attorney's argument that Dr. Foster found
2    that the claimant would be limited in his ability to sit and due to the side effects of his
3    medications," he rejected Dr. Foster's opinion with the statement that "the undersigned accords
4    more weight to the claimant's treating physicians and notes that Dr. Portwood, his pain
5    management physician, did not assess his capacity for work relative to his pain." (Tr. at 23.)

6            It is undisputed that the medical opinions of treating physicians are entitled to
7    special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d
8    418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a
9    treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at
10   830. "At least where the treating doctor's opinion is not contradicted by another doctor, it may
11   be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d
12   1391, 1396 (9th Cir. 1991)).

13           "Even if the treating doctor's opinion is contradicted by another doctor, the
14   Commissioner may not reject this opinion without providing 'specific and legitimate reasons'
15   supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler,
16   722 F.2d 499, 502 (9th Cir. 1983)). In order to meet the Commissioner's burden of setting forth
17   specific, legitimate reasons for giving less weight to the controverted opinion of a treating
18   physician, the ALJ must set out a detailed and thorough summary of the facts and conflicting
19   clinical evidence, state his or her interpretation of the evidence, and make findings. Thomas v.
20   Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). In developing the record and interpreting the
21   evidence, the ALJ must explain why significant probative evidence has been rejected and must
22   reach a decision supported by substantial evidence. Howard v. Barnhart, 341 F.3d 1006, 1012
23   (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

24           In this case, the ALJ rejected the examining psychologist's assessment of
25   plaintiff's limited ability to sit on the erroneous ground that plaintiff's treating pain management
26   specialist had not assessed plaintiff's capacity for work relative to his pain. (Tr. at 23.) As

described supra, Dr. Portwood did in fact assess plaintiff's capacity for work relative to his pain throughout 2006. In March 2006, she instructed plaintiff to remain off work until retrained and imposed specific restrictions on lifting, carrying, and climbing. Later, she added restrictions on walking and driving. Dr. Portwood regularly assessed the efficacy of plaintiff's medications and increased dosages or prescribed new medications to relieve plaintiff's pain and help him sleep. She consistently instructed plaintiff to change position as needed. Thus, the ALJ's sole reason for rejecting Dr. Foster's assessment of plaintiff's limited ability to sit is not supported by the record. Dr. Foster's assessment is consistent with Dr. Portwood's, which the ALJ failed to consider.

      The ALJ's decision does not refer to any evidence in the record contradicting the opinions of Dr. Portwood and Dr. Foster regarding plaintiff's limited ability to sit for extended periods of time. The record does contain evidence that is consistent with those opinions. The Social Security claims representative who conducted an in-person interview of plaintiff on May 19, 2005, when he applied for benefits, observed that plaintiff had difficulty with sitting, standing, and walking. (Tr. at 88.) The representative explained that plaintiff moved a lot during the interview and had to get up a few times to stretch and walk around. (Tr. at 89.) In an "Exertional Daily Activities Questionnaire" dated June 6, 2005, plaintiff stated that he was unable to sit for long periods of time. (Tr. at 97.) Plaintiff also stated that he can drive but his wife usually drives so he can change positions in the car. (Tr. at 98.) Even the non-treating, non-examining agency physicians who assessed plaintiff's RFC in July 2005 opined that plaintiff must periodically alternate sitting and standing to relieve pain or discomfort arising from his right hip and right knee conditions. (Tr. at 187.) On December 11, 2006, while conducting an

/////
/////
/////
/////

orthopedic evaluation of plaintiff, Dr. Branscum noted plaintiff's report that his back pain is aggravated by many activities, including prolonged sitting.[3]  (Tr. at 272.)

        The uncontradicted opinions of treating physician Portwood and examining psychologist Foster with respect to plaintiff's ability to sit may be rejected only for clear and convincing reasons.  The ALJ failed to mention, much less discuss, Dr. Portwood's general opinion of plaintiff's capacity for work relative to his pain or her specific opinion of plaintiff's inability to sit for long periods of time.  In the absence of any legitimate reason for rejecting Dr. Portwood's opinion, the ALJ's decision to reject Dr. Foster's assessment is also erroneous.  The court finds that plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly credit the opinions of treating pain specialist Dr. Portwood and examining psychologist Dr. Foster.

        **B.  Plaintiff's Subjective Symptom Testimony**

        Plaintiff argues next that the ALJ also failed to properly evaluate and credit the written statements made by plaintiff regarding the nature and extent of his pain and his functional limitations.

        It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  In evaluating a claimant's subjective testimony regarding pain and the severity of his symptoms, the

---

[3] Dr. Branscum observed that plaintiff "sat throughout the interview appearing in no acute distress," but he noted that plaintiff arose from his seated position by pushing himself up on the furniture and that he walked with a significant limp. (Tr. at 274.)  The interview lasted one hour and two minutes. (Tr. at 252.)

1  ALJ may consider the presence or absence of supporting objective medical evidence, along with
2  other factors.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen,
3  80 F.3d at 1285.  Absent affirmative evidence of malingering, however, the reasons for rejecting
4  a claimant's testimony must be clear and convincing.  Morgan, 169 F.3d at 599.

5  　　　　While the ALJ cannot substitute his or her own observations for medical
6  diagnosis, Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990), questions of credibility and
7  the resolution of conflicts in the testimony are usually deemed functions solely of the
8  Commissioner, Morgan, 169 F.3d at 599.  The determination of credibility is said to be a
9  function of the ALJ acting on behalf of the Commissioner.  Saelee, 94 F.3d at 522.  In general, an
10 ALJ's assessment of credibility should be given great weight.  Nyman v. Heckler, 779 F.2d 528,
11 531 (9th Cir. 1985).  Ordinary techniques of credibility evaluation may be employed, and the
12 adjudicator may take into account prior inconsistent statements or a lack of candor by the
13 witness.  Fair, 885 F.2d at 604 n.5.

14 　　　　In the present case, the ALJ found that plaintiff's medically determinable
15 impairments could reasonably be expected to produce the symptoms alleged by plaintiff but that
16 plaintiff's "statements concerning the intensity, persistence and limiting effects of these
17 symptoms are not entirely credible." (Tr. at 21.)  The ALJ's credibility finding is preceded by a
18 list of factors that should be considered in assessing the credibility of a claimant's statements,
19 with comments on evidence relevant to two of the factors.  (Id. (citing 20 C.F.R. § 404.1529(c) &
20 Social Security Ruling 96-7p).)  The ALJ did not specify any particular statements that he found
21 to be not entirely credible.

22 　　　　With respect to the type, dosage, effectiveness, and side effects of any medication
23 the claimant takes or has taken to alleviate pain or other symptoms, the ALJ noted that "[i]n June
24 of 2005, the claimant reported that his doctor no longer prescribed pain medication because there
25 was no pain 'killer' available that would kill his pain" and "[t]he medications he had been
26 prescribed for his pain stopped working." (Tr. at 20 (citing Ex. 6E/3 [tr. at 99]).)  The statements

appear in a daily activities questionnaire completed by plaintiff after he applied for Social Security disability benefits on May 19, 2005 (Tr. at 97-99.) The ALJ did not discuss these statements or explain what inference he drew from them. Nor did the ALJ refer to the extensive medical evidence concerning plaintiff's treatment by a pain specialist, the many medications prescribed for his pain, the increasing dosages of the medications that provided relief, and the side effects caused by some of the medications.

        The medical records provide a context for plaintiff's statements concerning his medications as of June 6, 2005. The March 11, 2005 treatment notes of David W. Tai, M.D., the orthopedic surgeon who began treating plaintiff in December 2003 after plaintiff was injured at work, reveal that plaintiff had returned to work in February 2005 but was having difficulty carrying out his duties because of pain. (Tr. at 164.) He was taking Lortab at night. In Dr. Tai's opinion, plaintiff needed to consider sedentary work. Dr. Tai's plan for future medical care "range[d] from various NSAIDS, pain medicines, [and] possible pain treatment modalities" to total hip arthroplasty. (Id.) On April 25, 2005, plaintiff requested a pain management consultation, and Dr. Tai agreed to recommend an evaluation by Dr. Portwood. (Tr. at 163, 236.) When Dr. Renbaum performed an orthopedic evaluation of plaintiff on June 10, 2005, just four days after plaintiff completed the daily activities questionnaire, he noted that plaintiff was under the care of Dr. Tai and that plaintiff had been prescribed hydrocodone, to be taken as needed. (Tr. at 218.) In the months following April 25, 2005, Dr. Tai recommended evaluation by Dr. Portwood, which had to be authorized through workers' compensation insurance, changed plaintiff's pain medications at least twice, and referred plaintiff for physical therapy in September 2005 and again in January 2006 while plaintiff awaited a consultation with Dr. Portwood. (Tr. at 163, 230-37.) Dr. Portwood began treating plaintiff for pain on February 14, 2006. (Tr. at 260.) The statements made by plaintiff concerning the status of his pain medication on June 6, 2005 are consistent with Dr. Tai's records documenting the pain suffered by plaintiff after he returned to work, his need for a consultation with a pain specialist as his pain increased, and his frustration

with medications that did not relieve his pain.  The mere fact that plaintiff made the statements cited by the ALJ does not provide a specific, clear, and convincing reason for rejecting plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms.

The ALJ's remaining comments concerning plaintiff's credibility were made in the catch-all category of "any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." (Tr. at 20.)  In this regard, the ALJ wrote:

> In May 2005, the claimant attended a face-to-face interview to file this claim.  The SSA interviewer noted that he was moving a lot during the interview and had to get up a few times to stretch and walk around.  He was also described as well groomed, with a clean appearance and helpful with necessary information (Exhibit 4E/3 [tr. at 89]).
>
> In June of 2005, the claimant reported that his pain was debilitating, however he could lift and carry light objects, go shopping with his wife, clean up his snake cage, wash dishes, pick up after himself, and drive an automatic car (Exhibit 6E [tr. at 97-99]).
>
> Although the claimant has had ongoing complaints of severe chronic pain, none of his treating or examining physicians has reported that he is not able to work.  The consensus is that he is able to perform at least sedentary work activity, and the record shows that he continued to work and discussed retraining with his doctors.

(Tr. at 20.)  Upon consideration of these comments, the court finds that they do not, either singly or in combination, provide a specific, clear, and convincing reason for rejecting plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms.

First, as noted <u>supra</u>, the record reflects that the SSA interviewer's statements were made in support of the observations that plaintiff had difficulty with sitting, standing, and walking. (Tr. at 88-89.)  The interviewer's observations and statements are consistent with the medical record and plaintiff's own statements about his limited ability to sit, walk, and stand.

Second, the ALJ's one-sentence summary of plaintiff's June 2005 daily activities report omits all of the limitations described by plaintiff.  Plaintiff stated that he goes shopping with his wife "sometimes," and she typically shops two times a month; plaintiff drives an

14

automatic car, but most of the time his wife drives so that he can change positions in the car; plaintiff washes dishes only about three times a week; it takes plaintiff about two hours to clean the snake cage, wash dishes, and pick up after himself, but he has to sit and rest for 15 to 20 minutes between activities. (Tr. at 97-99.) It is well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). See also 20 C.F.R. § 404.1572 (providing that, in general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities). The limited activities described by plaintiff in the June 2005 questionnaire do not detract from his credibility as to the intensity, persistence, and limiting effects of the pain from which he suffers.

Finally, the record does not support the ALJ's assertions that none of plaintiff's treating or examining physicians reported that he is unable to work and that the consensus of the treating and examining physicians was that plaintiff could perform "at least" sedentary work activity. Plaintiff was repeatedly found by treating and examining physicians to be unable to work. In his summary of the medical records, Dr. Branscum noted that treating physicians found plaintiff temporarily and totally disabled from December 22, 2003 to July 1, 2004, temporarily disabled from September 15, 2004 to January 2005, and temporarily totally disabled from the time he was taken off work in March 2005 until he was declared permanently disabled for workers' compensation purposes in June 2005. (Tr. at 280.) On April 4, 2006, Dr. Carey opined that plaintiff was temporarily totally disabled and had been temporarily totally disabled since at least January of 2006, and possibly earlier. (Tr. at 212.) Dr. Branscum himself opined in December of 2006 that plaintiff could not return to his past work and would be limited to

sedentary work, although he speculated that a total hip replacement might improve plaintiff's ability to walk and stand to the point that he could work as a private investigator. (Tr. at 280-81.) As for the treating physicians, Dr. Tai had concluded in March 2005 that plaintiff should "consider only sedentary type" work activity, and Dr. Portwood instructed plaintiff to remain off work until retrained. (Tr. at 164, 239.) No treating or examining physician opined that plaintiff could perform sedentary work without qualification or restriction. Plaintiff's brief return to his former work, his search for work, and his willingness to be retrained reflect his desire to work but do not detract from his credibility regarding the intensity, persistence, and limiting effects of his symptoms.

In the absence of any evidence of malingering or any clear and specific reasons for finding plaintiff's statements not entirely credible, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ improperly evaluated his testimony concerning his symptoms.

**II. Step Five Determination of Residual Functional Capacity to Perform Other Work**

At the fifth step of the sequential evaluation process, the Commissioner may satisfy his burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by applying the Medical-Vocational Guidelines, if appropriate, or by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988)); Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

When the ALJ takes the testimony of a vocational expert, the ALJ is required to question the expert in a manner that properly takes into account the limitations on the plaintiff's abilities to engage in various work-related functions. Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001). "While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." Light, 119 F.3d at 793.

Here, the assessment of plaintiff's RFC was not based on all the relevant evidence in the case record, and the ALJ did not provide an adequate rationale for disbelieving plaintiff's subjective complaints. With respect to plaintiff's RFC, the ALJ failed to credit portions of the opinions of Dr. Portwood and Dr. Foster, failed to properly assess plaintiff's ability to sit for long periods of time, failed to properly assess plaintiff's need to change positions, and failed to credit plaintiff's statements regarding pain. As a result of these errors, the ALJ failed to include all of plaintiff's limitations in the hypothetical questions he posed to the vocational expert at the administrative hearing on April 9, 2007.

Specifically, the ALJ did not include any limitation on plaintiff's ability to sit, any requirement that plaintiff be able to change positions, or any limitation that takes pain into account. "[A] person who is unable to sit for prolonged periods of time is incapable of engaging in the full range of sedentary work." Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Social Security Ruling 83-12). Such a limitation does not necessitate a finding of disability in every case. Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986) (affirming the determination that the claimant, who needed to alternate sitting and standing, was not disabled where there existed 3,750 to 4,250 jobs in the greater metropolitan area which the claimant could perform with his limitation). However, the jobs in which a person can sit or stand with a degree of choice are "typically professional and managerial ones." Soc. Sec. Ruling (SSR) 83-12, 1983 WL 31253, at *4 (Nov. 30, 1982). A person who is able to sit for a time, but must then get up and stand or walk for a while before returning to sitting, may be unable to perform unskilled sedentary jobs because

> most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4.

A vocational expert was consulted in this case. The ALJ's first hypothetical question presented plaintiff as a claimant with right hip, right knee, and lumbar spine disabilities that limit him to sedentary work. The ALJ specified that plaintiff is able to stand and walk for only a few minutes at a time and, while he is up and about, he cannot do any bending, stooping, lifting, carrying, running, jumping, squatting, or kneeling. (Tr. at 307.) The vocational expert testified that plaintiff could not perform any of his prior work but could perform a variety of unskilled sedentary jobs involving assembly work, such as loader, pharmaceutical laborer, and table worker. (Tr. at 307-10.) The ALJ's second hypothetical question presented plaintiff as a claimant with the same physical limitations but with the mental limitations found by Dr. Foster: mildly impaired ability to interact with supervisors and coworkers; moderately to significantly impaired ability to understand, remember, and carry out technical or complex job instructions; difficulty with auditory and visual processing and recall; moderately impaired ability to understand, remember, and carry out uncomplicated or simple job instructions; limited attention and concentration; and moderately impaired ability to withstand the stress and pressures of day-to-day work activity. (Tr. at 310-11.) The expert testified that plaintiff could still perform unskilled labor, including the jobs she had previously mentioned. (Tr. at 311.)

When the ALJ asked plaintiff's counsel if he had any questions for the vocational expert, attorney Hagel asked the vocational expert whether the unskilled laboring jobs she had described are "all production jobs," and she indicated that they are. (Tr. at 311-12.) In response to counsel's questions concerning the work pace required in such jobs, the expert testified that each facility has a certain standard that "covers a range of average for all employees" and that a person would have to produce at whatever level was established by the facility, "would have to stay within that range to keep the job," and would not be able to perform such jobs if he has symptoms that hinder his ability to work at an appropriate, competitive pace. (Tr. at 312.) The expert did not suggest any other kind of unskilled sedentary work that plaintiff could perform. (Id.)

The vocational expert's testimony in response to the ALJ's incomplete hypothetical questions has no evidentiary value. See Embry, 849 F.2d at 422. In light of Social Security Ruling 83-12 and the vocational expert's testimony in response to counsel's questions, it appears that the limitation on plaintiff's ability to sit for long periods of time, his need to change position at will, and the intensity and persistence of his pain, when combined with the physical and mental limitations found by the ALJ, would hinder plaintiff from working at the appropriate, competitive pace described by the vocational expert and would preclude plaintiff from performing the unskilled sedentary jobs to which the expert limited him due to his physical and mental residual functional capacities. The court therefore finds that the ALJ failed to satisfy his burden of showing that plaintiff can perform other types of work in the national economy, given plaintiff's age, education, and work experience.

## CONCLUSION

The ALJ failed to properly credit the medical opinions of plaintiff's treating pain specialist and the consultative examining psychologist and also failed to properly evaluate and credit plaintiff's statements regarding his symptoms and their impact upon him. These errors resulted in a failure to properly assess plaintiff's RFC, and the flawed RFC determination in turn led to hypothetical questions that did not include all of plaintiff's limitations. As a result of these multiple errors, the ALJ's decision is not supported by substantial evidence in the record.

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

The court finds that no useful purpose would be served by further administrative proceedings in this case. Plaintiff filed his application for disability insurance benefits more than four years ago. The uncontradicted opinions of Dr. Portwood and Dr. Foster establish that plaintiff's RFC should include his need to change positions at will and the limitations caused by the intensity and persistence of his pain. The vocational expert's responses to the questions asked by plaintiff's counsel reflect that plaintiff is unable to perform the unskilled sedentary work that the ALJ found he could perform. If the ALJ had based his decision on a hypothetical question that incorporated all of plaintiff's limitations, the ALJ would have found plaintiff disabled. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007).

The court finds that plaintiff was under a disability as defined by the Social Security Act as of March 15, 2005. Accordingly, the case will be remanded for payment of benefits. See Moore v. Comm'r of Soc. Sec. Admin, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's June 20, 2008 motion for summary judgment (Doc. No. 18) is granted;

2. Defendant's July 21, 2008 cross-motion for summary judgment (Doc. No. 19) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for payment of benefits.

DATED: July 13, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/napier2117.order